And we'll hear the last case on the calendar, Anita Pettengill v. Fireman's Fund Insurance. Ms. Pettengill, good afternoon. Good afternoon. Thank you, Your Honor, for this opportunity. Your Honor, the argument here is about lack of facts and lack of proof. The claim has not been proven and the counterclaim has not been proved and is unsupported. It is important to note that all of Fireman's Fund allegations were disputed by their own professionals, employees, and outside contractors. The affirmative defense, Fireman's Fund's claim that some damage was done by non-water-related causes is a fabrication of the truth. Men working to remove the ice from the roof dislodged a large block that crashed into the mechanical room causing damage. This was immediately reported by the insured. Fireman's Fund claims noncompliance concerning paperwork. They have everything. I have always complied as quickly as possible to the best of my ability. Fireman's Fund claims concealment, misrepresentation, fraud, false statements related to this insurance. All these claims were put to rest by Fireman's Fund's own witnesses. Fireman's Fund demanded that Northeast adjusters turn in an itemized list of contents that was prepared by four different people and never vetted or cross-checked for duplication, which would be normal policy according to Fireman's Fund adjusters. It is obvious that Fireman's Fund intentionally tried to make the jury bias and, with theatrics, false statements that were unsubstantiated and confused the jury. The only water fraud Fireman's Fund alleged in their claim and counterclaim was pointing to Donato Telesco in a block of ice falling into the pool house mechanical room. Donato Telesco was brought in in the 13th hour in the counterclaim and special defenses because there was no evidence of wrongdoing on my part. The Fireman's Fund claimed its nonpayment was justified by its special defenses, which defenses were also substance of Fireman's Fund counterclaim to be acts of fraud alleged against myself and Donato Telesco. Again, these claims were disputed by Fireman's Fund's witnesses and employees. The counterclaim specifically states, first counterclaim concerning the water loss. Water damage was not a result of ice dam because company was hired to remove ice and a block fell through the roof. Telesco used extension pole to poke holes. Telesco arranged for television that did not work to be placed underneath a leak in the ceiling. The jury did not understand that the counterclaim pointed to Telesco. There is no proof because this never happened. There was no proof that Anita Pattengill is guilty of breach of contract, concealment, or fraud. I never failed to cooperate and never misrepresented myself in any way. The second counterclaim fraud against Anita Pattengill in the water loss. The jury found guilty, not guilty, yet found me guilty for breach of contract. This is based on stacks of paper, showboating, and confusing the jury, which I will address. Then we come to the fire loss. Step by step, Fireman's Fund did a complete investigation of the fire loss, bringing in the best experts from all over the country to try to open a criminal investigation. First for arson, then for fraud. They even went so far as to contact the Federal Fraud Division with no result at all. I cooperated from the very beginning, handling over everything that was asked for, along with answering questions through interviews and depositions. The investigation showed all my assets, financial history, along with the companies I owned, properties, and all paperwork referring to my bankruptcies, and anything else that was asked for. There was nothing concealed or fraudulent. The witness on record verified the areas that Fireman's Fund brings up as problematic to be acceptable and routine. It is documented in the transcripts and testimony by Ms. Mathis, Mr. Christensen, as well as Special Investigator Mr. McBride. I'd like to bring up Beyond 360 Degrees Estimate. Ms. Mathias testified that it was in the parameters of cost that many people have done their own estimates in the past, and it was perfectly acceptable. Fireman's Fund had done a complete investigation of all my finances and companies I owned prior to any payments, which they testified is a policy that they have for any claims over $100,000. Ms. Mathis paid the estimate after vetting it herself, testifying it was an acceptable and accurate estimate of cost. I also would like to add that Mr. Telesco admittedly stated in his deposition that he prepared the estimate, no concealment, no proof of misrepresentation on behalf of either of us. And there was no guilt in wrongdoing concerning Mr. Telesco. The red light means you're out of time, so why don't you finish your thought? Okay, 36th First Year Road, it was a house I owned, and yes, it was in the hands, all financial information was handed over to Fireman's Fund on my behalf. There was no representation, we never stayed at Berkshire Road, it was just, again, a tactic that was used. My financial situations and my tax returns were misconstrued by Fireman's Fund to the jury. Therefore, they were given facts, the jury was misled because they were told over and over again that I had no income and that I lost money, therefore I could not have been able to afford the things that I had. This was bias and confusing to the jury. As far as my bankruptcy goes, the other six people living in the home, all the items in the home were insured as stated in the policy by the people that were living there in the home. And it's testified in my bankruptcy under penalty of- Thank you, we have your papers, we'll read your brief. Can I give my notes to you? So you have- Thank you, we have your brief. We'll hear from the other side. Thank you. Thank you. May it please the court, my name is Rhonda Tobin from Robinson and Cole, and I represent the FLE, Fireman's Fund Insurance Company. The judgment in favor of Fireman's Fund should be affirmed for two reasons. First, the jury assessed the evidence and the credibility of the witnesses and returned a verdict for Fireman's Fund. This court has held that a high degree of deference is accorded to the jury's evaluation of a witness's credibility. And jury verdict should be disturbed with great infrequency. Second, a motion for a new trial should not be granted unless the trial court is convinced that the jury reached either a seriously erroneous result or that the verdict is a miscarriage of justice. The trial court in this case found that the jury's findings reflected a reasonable assessment of the evidence at trial. Upon review of that ruling by the court, this court must view the evidence in the light most favorable to Fireman's Fund and should reverse that ruling only if this court finds there was an abuse of discretion. Both of these are highly deferential standards. In this case, the jury could reasonably have found several instances in which appellant concealed or misrepresented facts to Fireman's Fund in connection with both her water claim and her fire claim. Importantly, this court would have to find that every finding by the jury of a misrepresentation was seriously erroneous because the trial court correctly instructed the jury that any one misrepresentation or concealment was sufficient to void coverage under Fireman's Fund's policy. That policy, which is in our supplemental appendix at 53, says that the entire policy will be void if an insured conceals or misrepresents any material fact or circumstance. The jury found in favor of Fireman's Fund both on appellant's claims and also on Fireman's Fund's claims, awarding Fireman's Fund approximately $330,000 for the amounts it had already paid to Ms. Pettengill. In doing so, the jury found not only a breach of contract, but also found in connection with the water loss that the appellant's conduct constituted common law fraud, a finding that had to be proved by clear and convincing evidence. With respect to the water claim, as Judge Edginton found in his post-trial ruling, the court could reasonably have found that appellant either misrepresented or concealed facts from Fireman's Fund during its investigation, specifically the submission of the beyond 360 degree concept invoice, proposing that Fireman's Fund pay to rent property at Berkshire Drive that was owned by the appellant, And claiming that a TV had been damaged by the water when, in fact, it was inoperable prior to the loss. With respect to the fire claim, Judge Edginton found, as he found in his post-trial ruling, the jury could reasonably have found that appellant misrepresented or concealed facts to Fireman's Fund during its investigation of this loss, particularly about the valuation and ownership of the items that were claimed in the proof of loss. The jury could reasonably have found that appellant was in dire financial condition, that in the year before the fire, on her bankruptcy filing, she listed owning only $2,000 in household goods, but that a year later, she submitted a claim to Fireman's Fund for household goods in the amount of $790,000. The jury could reasonably have found that despite this dire financial condition, appellant claimed owning 26 TVs, $11,000 of shoes, $18,000 of books, and that she gave material misrepresentations about the source and value of various items including coach bags and rugs and a designer watch. Judge Edginton properly instructed the jury that a single instance of concealment or misrepresentation is enough to void the policy. Thus, in order to prevail on this appeal, the appellant must demonstrate that the jury could not reasonably have found any one of the listed misrepresentations. That fact, along with the fact that this court must give great deference, not only to the jury's findings, but also to the trial court's ruling on the motion for new trial, mandates that the court affirm the judgment. Appellant cannot demonstrate that the jury verdict was either seriously erroneous or a miscarriage of justice. If there are no questions, we rely on our submissions. Thank you. Thank you. We'll reserve decision. That completes the calendar for today. I'll ask the clerk to adjourn.